UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No.  2:06-cr-00312-LKK-KJN-1 |
|---|---|
| Respondent, | No.  2:08-cr-00107-LKK-KJN-1 |
| v. | |
| KULWANT SINGH GILL, | ORDER & FINDINGS AND RECOMMENDATIONS |
| Movant. | |

Movant is a federal prisoner proceeding without counsel.  Movant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  In September 2009, movant pled guilty to wire fraud (18 U.S.C. § 1343) and making a false statement (18 U.S.C. § 1001(a)(2)).  He seeks post-conviction relief alleging that defense counsel was ineffective at sentencing.  Movant also filed a motion to amend his § 2255 motion.  For the reasons set forth below, the court grants the motion to amend and recommends that the amended § 2255 motion be denied.

I.      Factual and Procedural Background

On July 13, 2006, the government filed a criminal complaint against movant in case number 2:06-cr-00312-LKK-JFM-1.  ECF No. 1.  The criminal complaint alleged that movant

---

[1] This motion was assigned, for statistical purposes, the following civil case numbers: 2:12-cv-02858-LKK-KJN, and 2:12-cv-02859-LKK-KJN.  Unless otherwise indicated, references to the court's docket are to case number 2:06-cr-00312-LKK-KJN-1.

1

committed mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Id.  An arrest warrant issued and movant was brought before the court on July 14, 2006.  ECF Nos. 2, 3.  Movant was release pursuant to the "Bail Reform Act of 1984."  ECF No. 4.  On August 3, 2006, the government filed an indictment for five counts of wire fraud in violation of 18 U.S.C. § 1343.  ECF No. 11.  Therein, the indictment alleged movant "devised and intended to devise a scheme and artifice to obtain money by means of false and fraudulent pretenses, representations, and promises."  Id. at 2.  The indictment described the alleged scheme to defraud as follows:

> [Movant], in his capacity as an interstate motor carrier, agreed to transport loads of freight, but then acted as an interstate broker and hired different interstate motor carriers to actually transport these loads.  Though he did not transport these loads of freight, [movant] received payments for these deliveries, and then withheld payments from the motor carriers who actually transported the loads.  As a result of the aforesaid scheme and artifice, [movant] wrongly defrauded various interstate motor carriers.

Id. at 2-3.  During movant's August 3, 2006 arraignment, he entered a plea of not guilty and requested a jury trial.  ECF No. 13.

On March 1, 2007, the government filed a superseding indictment that alleged six counts of wire fraud in violation of 18 U.S.C. § 1343, and five counts of making a false statement in violation of 18 U.S.C. §§ 1001(a)(2) and 2.  ECF No. 32.  Movant pled not guilty during an arraignment held on March 30, 2007.  ECF No. 39.

On March 6, 2008, the government filed a new indictment in case number 2:08-cr-00107-LKK-KJN-1.  ECF No. 1, Case No. 08-cr-00107.  The indictment alleged two counts of wire fraud in violation of 18 U.S.C. § 1343.  Id.  According to the indictment, while he was on pretrial release for the 2006 case, movant committed the same offense of wire fraud between August 2007 and October 2007, and in the same manner.  Id.  Movant was arrested and arraignment proceedings were held on March 10, 2008.  ECF No. 7, Case No. 08-cr-00107.  Movant pled not guilty and the court ordered him detained in light of the prior charges that he was released on and his alleged failure to abide by the conditions of release.  ECF Nos. 7, 8 & 21, Case No. 08-cr-00107.

////

1         On May 13, 2008, the two cases were consolidated. ECF No. 73.

2         On May 20, 2008, the court issued an order revoking movant's pretrial release in the 2006 case; thus mooting the issue of reconsideration of movant's detention in the 2008 case. ECF No. 77.

        On August 25, 2008, movant filed a motion for release from custody due to alleged inadequate medical care that exasperated his preexisting medical conditions. ECF No. 87. The court granted movant's motion and he was ultimately placed on supervised pretrial release with a special condition of home incarceration. ECF Nos. 88, 96.

        On September 22, 2009, the court held a change of plea hearing. Opposition, ECF No. 191, at Ex. 1. Therein, the court advised movant of his constitutional rights. Id. at 2-7. Movant was placed under oath and the court questioned him further. Id. at 9-10. The government recited the elements of each of the offenses. Id. at 10. Movant then pled guilty to counts one through eleven in the superseding indictment in the 2006 case, and to counts one and two in the indictment in the 2008 case; and the court accepted movant's guilty plea. Id. at 13. The court referred the matter to the probation department for its report and recommendation. Id.

        On or around August 23, 2011, the probation department issued a presentence investigation report ("PSR"). On March 8, 2012, movant, through counsel, filed a sentencing memorandum. ECF No. 170. On March 20, 2012, respondent filed a sentencing memorandum. ECF No. 171. On March 27, 2012, the court held a hearing on the probation department's report and recommendation and the matter of judgment and sentencing. Opposition, Ex. 2. After hearing arguments from both parties, the court sentenced movant to 130 months imprisonment on all counts in the 2006 and 2008 cases. Id. at 13.

        On March 29, 2012, movant filed a notice of appeal to the Ninth Circuit. ECF No. 173. On May 16, 2012, the Ninth Circuit granted movant's motion for voluntary dismissal of his appeal. ECF No. 179.

        On November 19, 2012, movant filed his original § 2255 motion with this court. ECF No. 182. The court notes that the § 2255 motion is unsigned. On January 18, 2013, prior to respondent filing a response to movant's motion, movant filed a motion to amend and an

amended § 2255 motion. ECF No. 189. On March 18, 2013, respondent opposed movant's motion to amend and his § 2255 motion. ECF No. 191. On March 29, 2013, movant filed a reply thereto. ECF No. 193.

II.     Motion to Amend

An amendment to a § 2255 motion that the court has not yet ruled on is governed by Fed. R. Civ. P. 15(a). See Mayle v. Felix, 545 U.S. 644, 654 (2005); see also In re Morris, 363 F.3d 891, 893 (9th Cir. 2004) (Rule 15(a) applies to habeas actions with the same force that it applies to other civil cases). As applied to habeas corpus actions, pursuant to 28 U.S.C. § 2242 and Rule 12 of the Rules Governing Section 2255 Cases, a movant may amend a § 2255 motion "once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Movant did not amend his motion within 21 days after serving it and therefore his opportunity to amend "as a matter of course" has expired. Nonetheless, Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Factors to be considered when ruling on a motion to amend a habeas corpus petition include bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether or not the party has previously amended his pleadings. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

Upon considering the requisite factors in deciding a motion for leave to file an amended § 2255 motion, the court grants movant's motion to amend. Here, movant filed a proposed amended motion that sets forth claims that are similar to those in his original § 2255 motion, but with some expansion of movant's arguments. ECF No. 189. Also relevant to the court's analysis is the fact that movant's original motion is unsigned in violation of Rule 11(a) of the Federal Rules of Civil Procedure.[2] ECF No. 182. Finally, movant filed his motion to amend before

---

[2] Rule 11(a) of the Federal Rules of Civil Procedure provides that every pleading, written motion, or other paper must be signed by the attorney of record or by the party if that party is unrepresented. Rule 11(a) requires the court to strike unsigned documents. In addition, Local

4

respondent filed a response, and respondent addressed movant's amended motion in its March 18, 2013 opposition. ECF No. 191 at 4 n.1. The court finds that because movant has not presented any substantively new claims in his amended motion and movant's original motion was unsigned, leave to amend will be granted. Because respondent addressed movant's amended motion in his March 18, 2013 opposition, he will not be ordered to respond.

Accordingly, the motion to amend the § 2255 motion is granted and the Clerk of the Court is directed to file the proposed amended motion to vacate, set aside, or correct movant's sentence pursuant to 28 U.S.C. § 2255 in both of movant's cases as a first amended motion in the court's docket. The original motion will be disregarded. Movant's first amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is submitted, and the court now turns to the claims raised therein.

III.   Legal Standards

   A.   28 U.S.C. § 2255

28 U.S.C. § 2255 provides that:

> [a] prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Id. A district court must summarily dismiss a § 2255 application "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District courts. When this standard is satisfied, neither a hearing nor a response from the government is required. See Marrow v. United States, 772 F.2d 525, 526 (9th Cir. 1985).

////

---

Rule 131(b) provides as follows: "(b) Signatures Generally. All pleadings and non-evidentiary documents shall be signed by the individual attorney for the party presenting them, or by the party involved if that party is appearing in propria persona. Affidavits and certifications shall be signed by the person executing the document. The name of the person signing the document shall be typed or printed underneath the signature. See Fed. R. Civ. P. 11. . . ." (emphasis omitted).

     B.     <u>Ineffective Assistance of Counsel</u>

The standard for an ineffective assistance of counsel claim is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, movant must show that his counsel's representation fell below an "objective standard of reasonableness."  <u>Id.</u> at 688.  This is a deferential standard in which the "distorting effects of hindsight" must be avoided.  <u>Id.</u> at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and it is movant's burden to overcome the presumption that the challenged action was sound trial strategy.  <u>Id.</u> at 689.  Second, movant must establish that prejudice resulted from his counsel's faulty performance.  <u>Id.</u> at 692.  To do so, movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.

Where a defendant pled guilty and is asserting ineffective assistance of counsel, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  Movant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

IV.     <u>Discussion</u>

     A.     <u>Claim I</u>

In Claim I movant argues that his "counsel failed to ensure a voluntary and knowingly intelligent plea."  ECF No. 189 at 4.  In support of his argument, movant refers to a psychiatric evaluation that indicates he "experienced the onset of depressive symptoms beginning in February 2006" which the doctor concluded "contributed to" movant's offenses while on pretrial release.  <u>Id.</u>  In that regard, movant argues that "[c]ounsel was aware of [his] mental state, yet allowed him to continue with the plea hearing and accept the plea agreement" and "failed to ensure that [he] fully understood the consequences of his plea."  <u>Id.</u>  The court notes that movant did not enter into a plea agreement but rather plead open.  Opposition, Ex. 1 at 8-13.

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent."  <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970).  A plea is voluntary and

6

intelligent if movant was competent to enter into the plea and did so knowingly and voluntarily. Godinez v. Moran, 509 U.S. 389, 401 (1993). "[A] plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady, 397 U.S. at 755 (citation and quotations omitted).

By way of background to this claim, the record reflects the following relevant facts. On September 22, 2009, the court held a change of plea hearing. Opposition, Ex. 1. During the hearing the court asked movant if he had sufficient time to discuss the matter with his counsel, Mr. Sabelli, to which movant responded, "Yes, Your Honor." Id. at 8. The court also asked movant if he discussed with Mr. Sabelli his rights, any possible defenses, and the possible consequences of the plea of guilty. Id. Movant responded, "Yes, Your Honor." Id. The court asked Mr. Sabelli if he had sufficient time to discuss the matter with movant and whether he discussed each of those matters with him, to which he responded, "We have, Your Honor." Id. at 8-9. Mr. Sabelli also stated to the court that he was "very satisfied" that movant understood those matters. Id. at 9. Movant was sworn in by the court and the following colloquy took place:

> THE COURT: Have any threats been made against you or any member of your family or anybody dear to you in order to get you to plead guilty?
>
> [MOVANT]: No, Your Honor.
>
> THE COURT: Have you been subjected to any force in order to get you to plead guilty?
>
> [MOVANT]: No, Your Honor.
>
> THE COURT: Were any promises made to you to get you to plead guilty that were not included in the written plea agreement?
>
> [MOVANT]: No, Your Honor.
>
> THE COURT: Have you been in the last 24-hours under the influence of alcohol, drugs or any mind-altering substance?
>
> [MOVANT]: No, Your Honor.

Id. at 9-10. The elements of the offenses movant was charged with were read in open court and

movant stated that he understood them as "things that the government would have to prove if [he] went to trial." Id. at 10-11.  Finally, the court had the following exchange with movant and movant's counsel:

> THE COURT: As you think about everything that you've done, is it in fact true that you committed the crimes, that you acted in such a way as to violate each of the elements of each of the charges?
>
> [MOVANT]: Yes, Your Honor.
>
> THE COURT: The court is satisfied that there is a factual basis. The court is also satisfied that the defendant knows and understands and freely and voluntarily waives his constitutional rights, has understood nature of the charges against him and the consequences of his plea.
>
> The court further finds there's a factual basis, and defendant's plea this morning will be free and voluntary.
>
> Mr. Sabelli, do you move to withdraw the pleas of not guilty as to Counts One through Eleven of Superseding Indictment Number Criminal S-06-312, and Counts One and Two of Indictment Criminal S-08-107?
>
> MR. SABELLI: I so move, Your Honor.
>
> THE COURT: Those motions are granted.  Kulwant Gill, as to Counts One through Eleven set forth in Superseding Indictment Number Criminal S-06-312, what is your plea, guilty or not guilty as to each of those charges?
>
> [MOVANT]: Guilty.
>
> THE COURT: As to Counts One and Two as set forth in Indictment Criminal S-08-107, what is your plea, guilty or not guilty?
>
> [MOVANT]: Guilty.
>
> THE COURT: Defendant's pleas of guilty will be received and entered upon the records of the court.  The matter is referred to the Probation Department for its report and recommendation. . . .

Opposition at Ex. 1, 12-13.

Here, movant claims that his plea was not voluntary because of his depression and his counsel's failure to ensure that he fully understood the consequences of his plea. ECF No. 189 at 4. However, the record belies movant's arguments. At the time of the change of plea hearing, both the court and movant's counsel confirmed that movant fully understood the nature of the charges and consequences of the plea. Opposition at Ex. 1. The court questioned movant

8

regarding whether he had sufficient time to discuss the matter with his counsel, including whether he discussed his rights, any possible defenses and the possible consequences of the plea of guilty. Id. at 8. Movant responded "Yes" to these questions, thus confirming that his counsel did not fail to ensure that he fully understood the consequences of his plea.

Moreover, the court specifically questioned movant regarding any threats made against him or his family, whether movant had been subjected to force, whether any promises were made to movant, and whether in the last 24-hours movant had been under the influence of alcohol, drugs or any mind-altering substance. Id. at 9-10. Movant responded "No" to all of these questions; and did not make a statement regarding his depression despite having an opportunity to do so. Thereafter, the court concluded that movant knew and understood and freely and voluntarily waived his constitutional rights, understood the nature of the charges against him and the consequences of his plea. Id. at 12-13. Movant's sworn responses during the change of plea hearing negate any inference that counsel was constitutionally ineffective. The court finds that movant has failed to establish that his plea was not voluntary or that his counsel was unreasonable before or during the change of plea hearing. Brady, 397 U.S. at 755. Movant's assertion that his counsel failed to ensure that he fully understood the consequences of his plea is conclusory and unsupported by any specific instance where counsel did not properly advise movant or where movant did not fully understand the consequences of his guilty plea. Thus, movant has failed to show that his counsel's representation fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 688.

Movant has also failed to establish prejudice. Movant has not established that he would not have plead guilty had he been properly advised, and would have instead gone to trial. To the extent movant argues that he received a harsher sentence by pleading guilty, this argument fails. Here, movant received a 130-month sentence which is a far less severe sentence than he would have received had he gone to trial and been convicted of all the crimes with which he was charged. See Opposition at Ex. 1, 6-7 (movant faced twenty years for each of counts one through six in the superseding indictment in case number 2:06-cr-312, five years for each of counts seven through eleven of the superseding indictment in case number 2:06-cr-312, twenty years for each

of counts one and two in the indictment in case number 2:08-cr-107, plus fines of $250,000 for each count). This result is in part because the court reduced his sentence for acceptance of responsibility for counts one and two of the indictment in case number 2:08-cr-107. Opposition at Ex. 2, 13 ("the court believes that a downward variance to 130 months is appropriate"). Moreover, this is not the test under Strickland which requires movant to demonstrate that he would not have plead guilty and would have instead opted to go to trial. Hill, 474 U.S. at 59. Movant has failed to set forth any argument that establishes prejudice under Strickland, and the court finds that the record is insufficient to establish a substantial likelihood that the result of the proceeding would have been different. Strickland, 466 U.S. at 694; see also Harrington v. Richter, 131 S. Ct. 770, 791-92 (2011).

For these reasons, the court recommends denying Claim I.

B.   Claim II

In Claim II, movant argues that his counsel "failed to challenge the discrediting of [movant's] mental health evaluation and physical health conditions," and "the ungrounded finding of the PSR writer upon which Government rely [sic]." ECF No. 189 at 5, 7. Movant also argues that he "has pre-existing medical conditions not accounted for by the PSR that include" several back surgeries between 1986 and 2006, and counsel failed "to investigate these facts further." Id. at 5, 7. Movant also requests the court to "reconsider U.S.S.G. §3E1.1(a) two-level reduction in light of the second pre-release in which there was a demonstration of remorse and responsibility in his conduct under the care of Doctor Stewart." Id. at 6-7. Finally, movant argues that the court could have granted a departure under USSG 5K2.13 for diminished capacity, but his counsel failed to set forth a "reasonable argument." Id. at 7.

To provide context to movant's claim, the following facts are relevant. Following movant's open plea on September 22, 2009, the court referred the matter to the probation department for its report and recommendation. Opposition, Ex. 1 at 13. On or around August 23, 2011, the probation department issued a PSR. Therein, the probation department summarized the applicable offense levels and recommended, *inter alia*, a total of 151 months imprisonment. The PSR noted that, pursuant to USSG 3E1.1(a), "if the defendant clearly demonstrates acceptance of

responsibility for his offense, a 2-level reduction is warranted." PSR at 12. However, the report did not recommend a 2-level decrease despite movant's written statement of apology, because movant committed the same conduct for which he was under federal indictment while he was on pretrial release. Id.

With regard to movant's physical condition, the PSR summarized the findings of Dr. Allan Pont who reviewed movant's medical records for the period of 2006 through 2010. Id. at 18. In that regard, the PSR states that "[a]ccording to Dr. Pont's review of these records, [movant] suffers with pancreatic and liver problems, type II diabetes, and hypertension. He has cirrhosis of the liver and a low platelet count." Id.

With regard to movant's mental and emotional health condition, the PSR summarized the findings of Dr. Pablo Stewart who conducted a psychiatric evaluation of movant. Id. at 18-19. According to Dr. Stewart, "[movant] experienced the onset of depressive symptoms beginning in February 2006" that "increased in severity until he began to suffer from a Major Depressive Disorder, severe with Psychotic Features, which began in approximately June 2006." Id. The PSR noted that "Dr. Stewart concluded this disorder contributed to [movant's] offense conduct while on pretrial release during the months of August through October 2007." Id. at 19.

With regard to factors that may warrant departure under the guidelines, the PSR explained that, pursuant to USSG 5K2.13 – Diminished Capacity, "a downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Id. at 22. Referencing Dr. Stewart's determination, the PSR recommended against a downward departure and reasoned as follows:

> Upon considering this case, coupled with the defendant's criminal history which involves conduct of theft and fraud, this officer does not believe any part of the defendant's conduct in this case is connected to his mental condition to a degree which is sufficient to warrant a downward departure. The defendant's criminal history is replete with instances of fraud and deceit, as in the instant offense, which suggests a propensity for committing acts of fraud and theft. Moreover, it does not stand to reason that his commission of the conduct charged in the second Indictment was connected to his mental illness when it is nothing more than a continuation of his scheme to defraud as committed in the first Indictment. There is

11

> nothing distinguishing the conduct as charged in the second Indictment from the earlier conduct which would support a mental condition caused him to commit the conduct charged in the second Indictment. The conduct committed under both Indictments in this case is identical. Finally, the defendant's conduct and history is similar to other individuals who are inclined to commit financial schemes to defraud, in that many commit other frauds or continue their schemes even while a criminal case is pending. Therefore, no downward departure is recommended pursuant to USSG 5H1.3 or USSG 5K2.13, as this officer does not believe the defendant's scheme to defraud was connected to his mental condition to a degree which would support a downward departure.

Id. at 22-23. The PSR also stated that "this officer does not believe [movant] suffered from diminished capacity or was impacted by his depression when committing any part of the instant offense." Id. at 29.

Finally, with regard to movant's physical condition and a potential downward departure, the PSR referred to Dr. Pont's evaluation of movant which indicated it is possible movant "would do all right in custody, but more likely he would develop serious conditions that might be difficult [for the prison system] to manage." Id. at 23-24. The PSR did not recommend a downward departure, and concluded that "when balancing [movant's] physical conditions with his criminal history and conduct in this case, this officer believes a term of imprisonment is definitely warranted." Id. at 24 (noting that should movant's physical condition become life-threatening, alternatives existed such as a request for a compassionate release).

On March 8, 2012, movant, through counsel, filed a sentencing memorandum. ECF No. 170. Therein, movant requested the court to sentence him to thirty-six months imprisonment and 120 months of supervised release. Id. at 2. Id. Movant countered the PSR's recommendation against a downward departure pursuant to 3E1.1, and argued that he has "fully accepted responsibility for his actions and deserves a downward adjustment of three offense levels." Id. at 3. With regard to his physical and mental condition, movant referred to letters from Drs. Pont and Stewart, and argued that he "suffers from a complex of medical issues including advanced diabetes, an undiagnosed blood condition related to the production of platelets, depression, and alcoholism." Id. at 7, Exs. 1-2. Movant averred that "[g]iven these medical and psychological issues, each day of incarceration will be much more difficult for him to endure that for others who

1  do not suffer from these issues." Id.

2  On March 20, 2012, respondent filed a sentencing memorandum. ECF No. 171. Therein
3  respondent supported the PSR findings regarding movant's acceptance of responsibility and
4  physical and mental conditions. Id. at 1-2.

5  On March 27, 2012, the court held a hearing on the probation department's report and
6  recommendation and the matter of judgment and sentencing. Opposition, Ex. 2. During the
7  hearing, movant's counsel provided the court with a letter from movant's medical team at Kaiser
8  confirming his conditions at that time, which included "very serious diabetes." Id. at 3. The
9  court stated that it was troubled by the fact that movant committed a further crime after being
10 released which justifies "the term which is recommended by the probation department." Id. at 5.
11 The court also stated:

> I recognize that there are medical conditions, but they appear to be conditions that the United States prisons are capable of addressing. I regard the entire pattern of your client's performance as justifying the case, but I certainly will listen to you before I pronounce judgment and sentence.

Id. at 6. Movant's counsel responded that, following his conduct during pretrial release, movant "immediately took responsibility for what he did." Id. In that regard, movant's counsel argued that movant "is entitled to acceptance of responsibility on both indictments because he has now accepted responsibility without a trial." Id. at 7. With regard to movant's health, movant's counsel argued for a variance "in the range of 50, 60 months . . . given how poor [movant's] health is and the fact that he's suffered from serious depression at the time he made these very, very bad choices." Id. at 9. Movant's counsel argued that his "choice to reoffend while on pretrial release" was "influenced by his mental state." Id. A finding, movant's counsel argued, that was "substantiated through a psychiatric opinion." Id. Movant's counsel also noted that this finding was uncontested by the government otherwise they would have had witnesses to testify during the hearing. Id.

The court questioned the government regarding acceptance of responsibility for the second indictment, noting that it agrees "that acceptance of responsibility of the first act is clearly not demonstrated by virtue of the continued criminal conduct." Id. at 11. The government argued

13

1   that while it did not deny that movant suffers from conditions such as depression and anxiety, the

2   government agreed with the probation officer that those conditions "did not cause him to do the

3   crimes alleged in the second indictment." Id. The court agreed with this argument as well. Id.

4       Finally, during the hearing, the probation officer confirmed for the court that if there were

5   a two-level reduction for acceptance of responsibility for the second indictment, the sentencing

6   range would be 130 to 162 months. Id. at 13. Thereafter, the court ruled, in part, as follows:

> The court finds the total offense level is 30, the criminal history category is V, the guideline range is 151 to 188 months, but the court believes that a downward variance to 130 months is appropriate.
>
> Accordingly, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Kulwant Singh Gill, is hereby committed to the custody of the Bureau of Prisons for a term as to both Counts One through Six and Counts Seven through Eleven, and Counts One and Two for a total of 130 months to be served –

13  Id. at 13; see also id. at 15:21-16:1.

14      Here, with regard to movant's argument that counsel was ineffective for failing to

15  "challenge the discrediting of [movant's] mental health evaluation and physical health

16  conditions" by the PSR, the court finds these arguments are belied by both the sentencing

17  memorandum filed by counsel and the transcript of the sentencing hearing, which demonstrate

18  that counsel advocated strongly for a downward departure based on movant's mental and physical

19  health conditions. In his sentencing memorandum, movant's counsel explicitly countered the

20  PSR findings by referring the court to evaluation letters from Drs. Pont and Stewart, and arguing

21  that movant "suffers from a complex of medical issues including advanced diabetes, an

22  undiagnosed blood condition related to the production of platelets, depression, and alcoholism."

23  ECF No. 170 at 7, Exs. 1-2. Movant's counsel also argued to the court that home confinement is

24  more appropriate considering movant's physical and mental health condition. Id. at 7-10. During

25  the sentencing hearing, movant's counsel presented the court with another medical evaluation of

26  movant, and cited movant's clinical depression and physical ailments as reasons for a downward

27  departure. Opposition, Ex. 2 at 3, 9. Movant's counsel specifically argued to the court that

28  movant's mental state, including his depression, "influenced" his choice to reoffend while on

pretrial release. Id. at 9. Given the arguments presented by movant's counsel, the court finds that movant's counsel more than adequately countered the PSR findings regarding movant's mental health evaluations; and argued to the court that movant's mental health condition, as summarized in his doctors' evaluations, justified a downward variance in his sentence. Thus, movant has failed to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Movant also failed to establish prejudice. Here, movant points to nothing in the record that shows a reasonable probability that, but for counsel's alleged errors, the court would have sentenced him differently. Id. at 694.

With regard to movant's argument that his counsel failed to investigate his other medical conditions, this argument is simply without merit. To the extent movant's counsel did not discover medical conditions between 1986 and 2006, movant could have easily informed his counsel of these conditions. Movant cannot withhold information regarding his medical history then use counsel's lack of knowledge of the information as a basis for an ineffective assistance of counsel claim. Nevertheless, under Strickland, counsel is not required "to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." Wiggins v. Smith, 539 U.S. 510, 533 (2003). Under the circumstances, the court finds that movant's counsel presented the court with several ailments movant was suffering from at the time of sentencing, and it was therefore not unreasonable for movant's counsel to decide not to investigate his prior health conditions dating back to 1986. Strickland, 466 U.S. at 690-91. Movant has also failed to establish that he was prejudiced by counsel's alleged failure to discover his additional medical conditions between 1986 and 2006. Here, the court acknowledged movant's numerous medical conditions and stated that "they appear to be conditions that the United States prisons are capable of addressing." Opposition, Ex. 2 at 6. There is nothing in the record to indicate that the court would have altered movant's sentence if movant's counsel had presented additional medical conditions, especially past conditions dating back twenty-six years. Thus, the court finds that movant failed to establish a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Finally, with regard to movants argument that counsel failed to argue for a downward departure under USSG 5K2.13-Diminished Capacity, the court finds that this argument also fails.[3] Here, the PSR recommended against a downward departure pursuant to USSG 5K2.13 because the probation officer did not believe movant's "scheme to defraud was connected to his mental condition to a degree which would support a downward departure." PSR at 23. During the sentencing hearing, the government argued in support of this finding, reiterating its belief that movant's depression and anxiety "did not cause him to do the crimes alleged in the second indictment." Opposition, Ex. 2 at 11. The court responded, "I don't disagree with that." Id. Here, other than his conclusory allegation that he was prejudiced by his counsel's failure to argue for this downward departure, movant presented no facts to support this argument. The record shows that the court agreed that movant's mental state did not influence his conduct while on pretrial release. Movant has pointed to nothing in the record that shows the court would have sentenced movant differently had his counsel argued for a downward departure due to his alleged diminished capacity. Thus, the court finds this argument fails for lack of prejudice. Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

For these reasons, the court recommends denying Claim II.

C.   Claim III

Movant argues that counsel failed to request a competency hearing "despite knowledge that [movant] was suffering mentally and incompetent [sic]," which resulted in an unreasonable sentence. ECF No. 189 at 8. Movant also argues that "counsel failed to object to the sentence on the ground that the district court did not sufficiently address and apply the factors listed in 18

---

[3] To the extent movant requests that the court to "reconsider U.S.S.G. §3E1.1(a) two-level reduction in light of" movant's acceptance of responsibility following his conduct while on pretrial release, the court finds the request is belied by the record. During the sentencing hearing, the court stated that "some consideration should be given to whether or not [movant] promptly responded to the second indictment" and questioned the probation officer on what the guideline range would be if there was a two-level reduction. Opposition, Ex. 2 at 12-13. The probation officer confirmed that the guideline range would change from 151 to 188 months to 130 to 162 months. Id. at 13. In ruling, the court found that the guideline range is 151 to 188 months, "but the court believes that a downward variance to 130 months is appropriate." Id. Therefore, the court granted a two-level reduction in light of movant's acceptance of responsibility in the 2008 case, and the court finds movant's request for reconsideration is without merit.

16

1  U.S.C.S. § 3553(a)," namely the "effect that [movant's] mental state played in this alleged
2  offense." Id. at 8-9.

3  Here, the court finds that movant's arguments that counsel was ineffective for failing to
4  request a competency hearing or object to the court's ruling fail for the same reasons discussed
5  above. The record shows that movant's counsel strongly advocated for a reduction in movant's
6  sentence based on his mental condition, the government did not dispute that movant was suffering
7  from, *inter alia*, depression and anxiety, and the court agreed that these mental conditions did not
8  cause him to commit the crimes in the second indictment. Opposition, Ex. 2 at 9, 11. Because
9  there was no challenge to movant's claimed mental conditions, the court finds that it was not
10 unreasonable for movant's counsel to not request a competency hearing. Likewise, the record is
11 insufficient to establish a substantial likelihood that the result of the proceeding would have been
12 different if a competency hearing had been requested. Strickland, 466 U.S. at 694.

13 With regard to movant's argument that movant's counsel was ineffective for failing to
14 object to his sentence on the ground that the court did not sufficiently address his mental
15 condition when it applied the § 3553(a) factors, this argument is without merit. The record shows
16 that the court did consider movant's mental health condition, and found that it did not contribute
17 to his conduct while on presentence release. Given the fact that the court considered this factor,
18 movant has failed to establish either that his counsel was unreasonable for failing to object, or a
19 reasonable probability that an objection would have changed the sentence imposed. Thus
20 movant's argument fails for lack of prejudice. Strickland, 466 U.S. at 694, 697.

21 Accordingly, the court recommends denying Claim III.

22 V.   Conclusion

23 Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that movant's
24 January 18, 2013 motion to amend in case numbers 2:06-cr-00312-LKK-JFM-1, and 2:08-cr-
25 00107-LKK-KJN-1, is granted and the Clerk of the Court is directed to file the proposed amended
26 motion to vacate, set aside, or correct movant's sentence pursuant to 28 U.S.C. § 2255 as a first
27 amended motion in the court's docket.
28 ////

Furthermore, IT IS HEREBY RECOMMENDED that:

1. Movant's first amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in case number 2:06-cr-00312-LKK-JFM-1 (ECF No. 189) be denied and that the Clerk be directed to close the companion civil file, No. 2:12-cv-02858-LKK; and

2. Movant's first amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in case number 2:08-cr-00107-LKK-KJN-1 (ECF No. 135) be denied and that the Clerk be directed to close the companion civil file, No. 2:12-cv-02859-LKK-KJN.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file movant may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: April 2, 2014

gill0107.2255

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE